UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STAR INSURANCE COMPANY,<br><br>**Plaintiff,**<br><br>v.<br><br>**IRVINGTON BOARD OF EDUCATION; HUNT, HAMLIN & RIDLEY; AND RONALD HUNT, ESQ.,**<br><br>**Defendants.** | Civ. No. 19-8677 (KM)(JBC)<br><br>**OPINION** |

### KEVIN MCNULTY, U.S.D.J.:

Now before the Court is the motion of defendants Hunt, Hamlin & Ridley and Ronald Hunt to dismiss of the complaint filed by plaintiff, Star Insurance Company ("Star"). The complaint seeks to recover funds Star expended to settle a personal injury lawsuit. That underlying lawsuit was *Destiny Dickens, an infant, by her guardian ad litem Yvone Smith, and Yvone Smith, individually v. Irvington Board of Education, et al.*, docket number ESX-L-4698-13 (N.J. Super. Ct. Essex Co.) (the "Dickens Action").[1] In the Dickens Action, the plaintiffs sued the Irvington Board of Education (the "Board") for damages based on injuries Destiny Dickens sustained while attending Union Avenue Middle School in Irvington Township. Defendant Hunt, Hamlin & Ridley, by Defendant Ronald Hunt, Esq., represented the Board in the Dickens Action.

The complaint filed by Star Insurance in this action asserts one cause of action against Mr. Hunt and Hunt, Hamlin & Ridley (the "Hunt Defendants") for legal malpractice. The allegation is essentially that these attorneys did not competently represent the Board in the state-court Dickens Action.

---

1   Ms. Dicken's first name was misspelled in the complaint. The correct spelling of her first name is Destinee. (*See* DE 7-2 at 22).

1

Defendants now move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss for failure to state a claim. (DE 7). Defendants also move to recover their attorney's fees and costs pursuant to N.J. Court Rule 4:42-9(a)(6). Plaintiff has filed a response in opposition to the motion. (DE 14).

For the reasons explained herein, I will grant the Hunt Defendants' motion to dismiss without prejudice. I will deny defendants' motion for attorney fees and costs.

### I. Summary[2]

The allegations of the complaint are assumed to be true for purposes of this motion only.

Star issued a policy to the Board as the named insured, policy number CP 0641890, effective from 7/1/11 – 7/1/12 (the "Star Policy"). (Compl. ¶ 1). The Star Policy, which is not attached to the complaint, allegedly

> contained a self-insured retention (the "SIR") in the amount of $250,000. The SIR endorsement in the Star Policy required the Board to, inter alia: (i) accept any reasonable settlement offer within the SIR; and (ii) adequately defend any claims brought against the Board.

(Compl. ¶ 15). The Star Policy also required the Board to keep Star apprised of developments in the litigation and to cooperate with Star, something the Board allegedly failed to do. (Id. ¶¶ 16, 17).

The complaint alleges that Star, as insurer, expended funds to settle the Dickens Action. The claim in that action was that Ms. Dickens, a minor at the time, was attending Union Avenue Middle School when she fell and broke her

---

[2] Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

"Compl." = The complaint filed by Star (DE 1).

"DBr" = Defendants' motion to dismiss (DE 7-1).

"PBr" = Star's opposition to the motion to dismiss (DE 14).

"Reply" = Defendants' reply in support of their motion to dismiss (DE 17).

2

elbow. (*Id.* ¶ 10). The Star policy was in effect on the date of Ms. Dickens's fall. (*Id.* ¶ 13).

Ms. Dickens sued the Board to recover damages arising from that mishap. In June 2017, the parties to the Dickens Action held an arbitration and Ms. Dickens was awarded $180,000. (*Id.* ¶ 12). The Board however rejected that award and proceeded to trial, without notifying Star.[3] (*Id.*). At trial, the jury returned a verdict in favor of Ms. Dickens, awarding her $6 million. (*Id.* ¶ 17). The Board appealed. (*Id.* ¶ 18). Star participated in that appeal, subject to a reservation of rights. (*Id.* ¶ 19). While the appeal was pending, the parties held a mediation on October 30, 2018. (*Id.* ¶ 20). At the mediation, representatives of the Board directed the mediator to offer plaintiffs a single settlement offer: $1 million to resolve all claims. (*Id.*).

Just before the mediator conveyed the $1 million offer, Star reached a separate agreement with the Board in which the insurer limited its contribution to the settlement to "25% of the amount of the $1 million settlement offer in excess of the unimpaired portion of the Board's SIR under the Star Policy." (*Id.* ¶ 21). Thus, Star's contribution was fixed at $212,500 under what the complaint deems a "Settlement Funding Agreement." (*Id.* ¶ 22; *see also* ¶ 25). Ultimately, Ms. Dickens accepted the Board's $1 million settlement offer.[4]

---

[3] It may be inferred from these facts that the Board valued the claim at less than $180,000, well within the SIR limit of $250,000.

[4] Defendants attach a copy of the settlement agreement entered in the Dickens Action, in which the Board agreed to contribute $117,437.90, representing the amount remaining under the Star Policy's $250,000 SIR. (*See* DE 7-2 at 22–30). Star agreed to pay the balance of the settlement subject to a reservation of rights, including its right to contest the impairment of the SIR and the right to file suit against the Board for reimbursement. (*Id.*). Defendants attached a copy of the Star Policy to their motion to dismiss. (*See* DE 7-2 at 34).

Both the settlement agreement and the policy are referred to and relied upon in the complaint. Star does not dispute the authenticity of those documents. (DBr at 8–9). They are properly considered on a 12(b)(6) motion. *See* Section II, *infra*.

3

Star asserts that it contributed $882,562.10 to the settlement. The result was that Star paid $670,062 in excess of what it agreed to pay under the Settlement Funding Agreement. (*Id.* ¶ 28).

Only Count IV of the complaint—a claim of legal malpractice—is asserted against the Hunt Defendants. Count IV alleges that the Hunt Defendants, as attorneys, owed Star a duty when they represented the Board in the Dickens Action. That duty, Star asserts, was then breached when the Hunt Defendants (1) failed to move for summary judgment; (2) failed to make a motion for judgment as a matter of law under New Jersey Rule of Court 4:40-1 at the close of the plaintiffs' case; and (3) conceded a permanent injury at the time of trial. (*Id.* ¶¶ 11, 44, 45). Star asserts that these failures impaired any prospect of negotiating a reasonable settlement after entry of judgment, as well as the prospects for appeal. (*Id.* ¶ 46). Therefore, Star seeks to recover the entirety of what it paid to settle the Dickens Action: $882,562.10, plus its legal fees.

The Hunt Defendants now move to dismiss Count IV for failure to state a legal malpractice claim. *See* Fed. R. Civ. P. 12(b)(6). (DBr at 19–31). Defendants also contend that Star failed to comply with the notice requirements of the New Jersey Tort Claims Act. (*Id.* at 31–36). Finally, the Hunt Defendants move for an award of attorney fees and costs should they prevail on their motion to dismiss. (*Id.* at 36–37).

## II.     Legal Standard on Motion to Dismiss

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible

4

on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *accord In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record"); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 292 (D.N.J. 2009) (court may consider documents referenced in complaint that are essential to plaintiff's claim). The rationale for that exception is apparent: "When a complaint relies on a document . . . the plaintiff obviously is on notice

of the contents the document, and the need for a chance to refute evidence is greatly diminished." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993). Thus reliance on such documents does not convert a motion to dismiss into a motion for summary judgment.

### III. Discussion
#### a. Legal Malpractice Claim (Count IV)
##### i. Standard

"Legal malpractice is a variation on the tort of negligence." *Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C.*, 845 A.2d 602, 611 (2004). "Like most professionals, lawyers owe a duty to their clients to provide their services with reasonable knowledge, skill, and diligence . . . . 'What constitutes a reasonable degree of care is not to be considered in a vacuum but with reference to the type of service the attorney undertakes to perform.'" *Ziegelheim v. Apollo*, 607 A.2d 1298, 1303 (1992) (citing *St. Pius X House of Retreats v. Diocese of Camden*, 443 A.2d 1052 (1982)).

To present a prima facie legal malpractice claim, a plaintiff must establish the following elements: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." *Jerista v. Murray*, 883 A.2d 350, 359 (2005) (internal quotation omitted). In general, an attorney owes a duty to his client to perform diligently and with a high degree of "fidelity and good faith." *Gilles v. Wiley, Malehorn & Sirota*, 783 A.2d 756, 760 (N.J. Super. Ct. App. Div. 2001). The scope of an attorney's duty is to exercise "'that degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise.'" *Id.* (quoting *St. Pius X*, 443 A.2d at 1060–61).

New Jersey courts are generally reluctant to allow those not in privity of contract with an attorney to maintain a malpractice action against that attorney. *See Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 264 (2005) (citation omitted). In limited circumstances, however, attorneys may owe a duty of care

6

to non-clients. *Petrillo v. Bachenberg*, 655 A.2d 1354, 1359–60 (1995). A lawyer may thus be liable to a third party "where an independent duty is owed." *Estate of Fitzgerald v. Linnus*, 765 A.2d 251, 257 (N.J. Super. Ct. App. Div. 2001) (citing *Davin, L.L.C. v. Daham*, 746 A.2d 1034 (N.J. Super. Ct. App. Div. 2000).

The "independent duty" exception to the general rule of non-liability was explicated in *Petrillo*:

> We also recognize that attorneys may owe a duty of care to non-clients when the attorneys know, or should know, that non-clients will rely on the attorneys ['] representations and the non-clients are not too remote from the attorneys to be entitled to protection. The Restatement's requirement that the lawyer invite or acquiesce in the non-client's reliance comports with our formulation that the lawyer know, or should know, of that reliance. No matter how expressed, the point is to cabin the lawyer's duty, so the resulting obligation is fair to both lawyers and the public.

655 A.2d at 1359–60. Amplifying, the New Jersey Supreme Court stressed that the *Petrillo* holding was "infused" with the idea that "the nature of the relationship between the attorney and the third party governs the duty inquiry":

> If the attorney's actions are intended to induce a specific non-clients reasonable reliance on his or her representations, then there is a relationship between the attorney and the third party. Contrariwise, if the attorney does absolutely nothing to induce reasonable reliance by a third party, there is no relationship to substitute for the privity requirement. Indeed, in *Petrillo*, we noted that "when courts relax the privity requirement, they typically limit a lawyers duty to situations in which the lawyer intended or should have foreseen that the third party would rely on the lawyers work." *Id.* at 482, 655 A.2d 1354 (citing Jay M. Feinman, Economic Negligence: Liability of Professionals and Businesses to Third Parties for Economic Loss 131–34 (1995)). Put differently, ***the invitation to rely and reliance are the linchpins of attorney liability to third parties***.

*Banco Popular*, 876 A.2d 253 at 265 (emphasis added).

### ii. Analysis

The Hunt Defendants move to dismiss Count IV, asserting that it contains nothing more than conclusory allegations, rather than facts that would support a negligence theory. (DBr at 19–20). Specifically, they point out that the Hunt firm did not have any attorney-client relationship with Star. (*Id.* at 20–21). In addition, the complaint fails to allege facts explaining how the Hunt Defendants might have induced Star, a third party, to rely on their advice. (Reply at 8–10).

Star counters that the Hunt Defendants owed a duty to Star to defend the underlying claim with professional competence. (PBr 14 at 11). In support, Star proffers a variety of theories, including the assertion that the Hunt attorneys could reasonably have foreseen that any malpractice by them would harm their client's insurance carrier. (*Id.* at 12–13).

Star's arguments, however, fail to address the pleading deficiencies in the complaint. Assume, for example, the correctness of the legal proposition that the Hund Defendants may have owed a duty to Star.[5] There are nevertheless no facts pled to suggest how defendants might have breached that duty. Instead, the complaint conclusorily asserts the following:

> Without limitation, the Attorney Defendants breached their duty of care by failing to move for summary judgment, and by failing to move for judgment as a matter of law either at the close of the underlying plaintiffs' proofs in the Dickens Action, or at the close of all the evidence.

---

[5] This assumption gives Star a considerable benefit of the doubt. In the absence of an attorney client relationship, as noted *supra*, the relevant inquiry focuses on the relationship between Star and the defendants—that is, whether the defendants induced reliance or had reason to know of Star's reliance. But, it is not clear from any facts in the complaint how, if at all, Star relied on the legal advice provided by defendants or how Star was invited to rely on the legal advice defendants were providing to the Board. *Banco Popular*, 876 A.2d 253 at 265. The complaint suggests that Star had no interactions with the Hunt Defendants or contemporaneous knowledge of the Dickens trial. That state of affairs seemingly resulted from the failure of the Board to notify its carrier of the claim. (*See, e.g.*, Compl. ¶¶ 12, 18). Whether the Hunt Defendants share responsibility for that failure cannot be assessed based on the complaint.

> Without limitation, the Attorney Defendants further breached their duty of care by conceding a permanent injury at the time of trial.

(Compl. ¶¶ 44–45).

Many a litigant might, *e.g.,* elect to forgo a summary judgment motion. Such a decision may represent a legitimate litigation strategy, particularly where such a motion has little chance of success. More is required before, even at the complaint stage, malpractice can be inferred from that bare fact. The complaint contains no facts to support the contention that counsel's failure to pursue Star's preferred course of action amounted to malpractice.

I am cognizant that Star believes it was denied the opportunity to participate in the Dickens Action, which was filed against its insured, the Board. Still, even as to a primary client, like the Board here, a lawyer "is not an insurer. He is not a guarantor of the soundness of his opinions, or the successful outcome of the litigation which he is employed to conduct...." *2175 Lemoine Ave. Corp. v. Finco, Inc.*, 640 A.2d 346, 351 (N.J. Super. Ct. App. Div. 1994) (quoting *McCullough v. Sullivan*, 102 N.J.L. 381, 384, 132 A. 102 (E. & A.1926)), *certif. denied*, 645 A.2d 140 (1994). Instead, an attorney must provide a reasonable degree of care and "abide by a client's decisions concerning the objectives of representation." *State v. Fortin*, 843 A.2d 974, 1014 (2004) (quoting Model Rules of Prof'l Conduct R. 1.2(a) (2003)). This complaint fails to set forth how the attorneys' strategic decisions fell short of that standard.

As I say, I have accepted, but only *arguendo,* the proposition that the Hunt Defendants owed some sort of duty to Star. But even accepting as true all well-pleaded facts in the complaint, Count IV does not set forth a breach of that duty—*i.e.,* litigation conduct so unreasonable as to amount to legal malpractice.

Accordingly, defendants' motion to dismiss Count IV is **granted**. Because this is an initial dismissal, it will be entered without prejudice to the submission, within 30 days, of a properly supported motion to amend the complaint. Any such proposed complaint should factually address both the duty and breach elements of the legal malpractice tort.

9

### b. New Jersey Tort Claims Act

Because I have dismissed Count IV, the issue of the notice procedures under New Jersey Tort Claims Act ("NJTCA") is moot. The dismissal of Count IV is without prejudice to a motion to amend the complaint, however, and any motion to amend may be subject to a claim of futility based on noncompliance with the NJTCA. I therefore briefly address the NJTCA issues for the guidance of the parties.

The NJTCA establishes that public entities and their employees "shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein." N.J. Stat. Ann. § 59:1-2. Under the NJTCA, "'Public employee' means an employee of a public entity" and "'Employee' includes an officer, employee, or servant, whether or not compensated or part-time, who is authorized to perform any act or service; provided, however, that the term does not include an independent contractor." *Id.* at 59:1-3. A professional who has clients in addition to the municipal client can still qualify as an "employee" under the NJTCA because "'public employee' under the TCA includes those who work part-time." *Masapollo v. Hunt*, No. 15-2270 (RMB/KMW), 2016 WL 5402213, at *3 (D.N.J. Sept. 27, 2016)

Regarding municipal attorneys, the Court in *Masapollo* outlined the state of New Jersey case law as follows:

> New Jersey courts have generally considered municipal attorneys to be public employees governed by the TCA. *See, e.g., Stoeckel v. Twp. of Knowlton*, 387 N.J. Super. 1, 21 (App. Div. 2006) (finding that tort claims against attorney were governed by TCA "[b]ecause all of the acts upon which plaintiff relies for the imposition of liability on [attorney] O'Connell occurred while O'Connell was rendering services to the township"); *Girard v. Alverez*, 144 N.J. Super. 259, 262 (App. Div. 1976) (finding defendants, including township attorneys, to be public employees and thus immune from suit under TCA); *Martin v. Rochelle Park Twp.*, 144 N.J. Super. 216, 221 (App. Div. 1976) (holding that "substantive liability" of township attorney was "controlled by the Tort Claims Act because he was a public employee at the time of the alleged misconduct."); *Nat'l Amusements, Inc. v. New Jersey Tpk. Auth.*, 261 N.J. Super.

10

468, 480 (Ch. Div. 1992), *aff'd*, 275 N.J. Super. 134 (App. Div. 1994) (finding that attorney for New Jersey Turnpike Authority, a public entity, was a public employee for purposes of TCA because "Turnpike Authority employed [him] as an attorney during the period of controversy in this case" and "[a]ll communications between plaintiff and [defendant attorney] were within the scope of [his] employment"); *see also D & D Associates, Inc. v. Bd. of Educ. of N. Plainfield*, 2012 WL 1079583, at *30 (D.N.J. Mar. 30, 2012), *aff'd*, 552 Fed.Appx. 110 (3d Cir. 2014) (noting that " 'township attorneys' have been deemed public employees under the TCA"); *Delbridge v. Office of Pub. Def.*, 238 N.J. Super. 288, 319 (Ch. Div. 1989), *aff'd sub nom. A.D. v. Franco*, 297 N.J. Super. 1 (App. Div. 1993) (observing that township or municipal attorneys are considered public employees for purposes of TCA).

*Id.*, 2016 WL 5402213, at *2.

The term "municipal attorney," as used in this case law, is not further defined. An attorney who is an ordinary salaried employee of the municipality might fit comfortably within that definition. On the other hand, an outside attorney retained to represent the municipality (or the School Board) might present a more complex issue. "While 'township attorneys' have been deemed public employees under the TCA, it is not apparent under that precedent whether as a matter of law an attorney retained to represent a school board is a public employee." *D & D Assocs., Inc.*, 2012 WL 1079583, at *30.

To determine whether a person qualifies as a public employee for purposes of the NJTCA, courts generally apply one of two tests: (1) the control test or (2) the relative nature of the work test. *See Lowe v. Zarghami*, 731 A.2d 14, 19 (1999)).

The control test has been explicated thus:

The control test is grounded in the common law master-servant relationship. *New Jersey Property–Liability Ins. Guar. Ass'n v. State*, 195 N.J.Super. 4, 8, 477 A.2d 826 (App. Div.), *cert. denied*, 99 N.J. 188, 491 A.2d 691 (1984). The master-servant relationship exists whenever the employer controls both the nature of the work performed and the manner in which the work is completed. *Errickson v. Schwiers Co.*, 108 N.J.L. 481, 483, 158 A. 482 (E. & A. 1932). On the other hand, an employer hires an independent contractor to complete a particular task, but does not direct the

11

> manner in which it is to be completed. *Ibid*. Drawing on those principles, the control test assesses four factors in determining a worker's status: (1) the degree of control exercised by the employer over the means of completing the work; (2) the source of the worker's compensation; (3) the source of the worker's equipment and resources; and (4) the employer's termination rights. *Delbridge v. Office of the Public Defender*, 238 N.J. Super. 288, 320–21, 569 A.2d 854 (Law Div.1989) *aff'd* 297 N.J. Super. 1, 687 A.2d 748 (App. Div. 1993); *New Jersey Property, supra*, 195 N.J. Super. at 14, 477 A.2d 826.
>
> The greater the degree of control exercised by the employer, the more likely a worker will be considered an employee. The control test is satisfied whenever the employer retains the right of control, even if the employer may not exercise actual control over the worker. *Sloan v. Luyando*, 305 N.J.Super. 140, 148, 701 A.2d 1275 (App.Div. 1997).

*Lowe*, 731 A.2d at 19–20.

The relative nature of the work test, on the other hand, requires a court to examine the following factors:

> the extent of the economic dependence of the worker upon the business he serves and the relationship of the nature of his work to the operation of that business." *Marcus v. Eastern Agricultural Ass'n*, 58 N.J.Super. 584, 603, 157 A.2d 3 (App.Div. 1959) (Conford, J. dissenting), *rev'g on dissent*, 32 *N.J.* 460, 161 *A*.2d 247 (1960). That test addresses
>
>> various situations in which the control test does not emerge as the dispositive factor. For example, where it is not in the nature of the work for the manner of its performance to be within the hiring party's direct control, the factor of control can obviously not be the critical one in the resolution of the case, but takes its place as only one of the various potential indicia of the relationship which must be balanced and weighed in determining what, under the totality of the circumstances, the character of that relationship really is.
>>
>> [*Marcus, supra,* 58 N.J.Super. at 597, 157 *A*.2d 3 (Conford, J.A.D., dissenting).]

*Lowe*, 731 A.2d at 20.

As should be apparent, either the "control test" or the "relative nature of the work test" may require a fact-intensive inquiry. Such an inquiry ordinarily cannot be accommodated within a Rule 12(b)(6) framework, and there has been no discovery concerning the nature of the Hunt Defendants' work for the Board or the municipality of Irvington. Still, such facts may be developed in connection with a jurisdictional inquiry, see Fed. R. Civ. P. 12(b)(1), or on summary judgment.[6]

Should a defendant be deemed a "public employee," the NJTCA imposes certain procedural prerequisites to the filing of a lawsuit. "[N]o action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J. Stat. Ann. § 59:8-3. Such a pre-suit claim must contain certain facts about the claimant and the nature of the injury; it must be filed with the department or agency involved in the alleged wrongful act; and it must be signed by the claimant. Id. §§ 59:8–4, 8–6, 8–7.

Section 59:8-8 imposes certain time limits:

> A claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the 90th day after accrual of the cause of action. After the expiration of six months from the date notice of claim is received, the claimant may file suit in an appropriate court of law. The claimant shall be forever barred from recovering against a public entity or public employee if:

---

[6] Compliance with NJTCA may be raised as a challenge to subject matter jurisdiction under Rule 12(b)(1), Fed. R. Civ. P. See Baldeo v. City of Paterson, No. CV185359KMSCM, 2019 WL 277600, at *5 (D.N.J. Jan. 18, 2019) (NJTCA notice requirement is "a jurisdictional precondition to filing suit."); Taylor v. New Jersey, No. CIV.A. 13-6594 PGS, 2014 WL 4215440, at *8 (D.N.J. Aug. 25, 2014); Bethea v. Roizman, No. CIV. 11-254 JBS/JS, 2012 WL 2500592, at *15 (D.N.J. June 27, 2012) (dismissing tort cause of action under Rule 12(b)(1) for failure to file pre-suit notice of claim under NJTCA). A factual Rule 12(b)(1) challenge permits the court to consider facts extrinsic to the complaint, and may even require a plenary hearing. Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015); CNA v. United States, 535 F.3d 132, 144 (3d Cir. 2008).

13

> a. The claimant failed to file the claim with the public entity within 90 days of accrual of the claim except as otherwise provided in N.J.S. 59:8-9; or
>
> b. Two years have elapsed since the accrual of the claim; or
>
> c. The claimant or the claimant's authorized representative entered into a settlement agreement with respect to the claim.

N.J. Stat. Ann. § 59:8-8.

A court may, within its discretion, permit a claimant who fails to comply with the 90-day deadline to "file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby." Such an application must be "supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within" 90 days. Still, the outside two-year limit continues to apply: "[I]n no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim." N.J. Stat. Ann. § 59:8-9. Accrual has its ordinary meaning and is not "affected by the notice provisions contained herein." *Id.* § 59:8-1.

"The statute does not define what circumstances are to be considered 'extraordinary' and necessarily leaves it for a case-by-case determination as to whether the reasons given rise to the level of 'extraordinary' on the facts presented." *Ventola v. New Jersey Veteran's Mem'l Home*, 751 A.2d 559, 560–61 (2000)(citing *Lowe v. Zarghami, supra*, 731 A.2d 14). In *Lowe* and *Ventola*, the New Jersey Supreme Court found extraordinary circumstances existed where a plaintiff was justifiably unaware that a defendant was a public employee. For example, in *Lowe*, plaintiff did not know that her treating physician was also "a clinical professor employed by the University of Medicine and Dentistry of New Jersey." *Lowe*, 731 A.2d at 14. The court found extraordinary circumstances excusing the plaintiff's failure to file a timely claim because the defendant's "apparent status as a private physician obscured his true status as a public employee." *Id.*

14

### c. Attorney fees and costs

Defendants also seek an award of counsel fees and costs under New Jersey Court Rules ("NJCR") § 4:42–9(a)(6). Rule 4:42–9(a)(6) states that a party may recover attorney fees "[i]n an action upon a liability or indemnity policy of insurance" if that party is a "successful claimant." The rule seeks "to discourage groundless disclaimers and to provide more equitably to an insured the benefits of the insurance contract without the necessity of obtaining a judicial determination that the insured is, in fact, entitled to such protection." *Burlington Ins. Co. v. Northland Ins. Co.*, 766 F.Supp.2d 515, 532 (2011) (quoting *Guarantee Ins. Co. v. Saltman*, 526 A.2d 731 (N.J. Super. Ct. App. Div. 1987)). In short, it attaches a potential cost to an insurer's wrongful refusal to indemnify.

The Rule as promulgated awarded defense costs only where an insurer refused to indemnify or defend its insured's third-party liability to another. "However, 'New Jersey courts have also awarded attorney fees incurred by an insured in a declaratory judgment action to determine the existence of coverage of liability to third parties.'" *Carolina Cas. Ins. Co. v. Travelers Prop. Cas. Co.*, No. CIV.A. 09-4871 KM, 2015 WL 794909, at *6 (D.N.J. Feb. 25, 2015) (citation omitted). Successful claimants—not just policy holders—may recover attorney fees. "A party who 'obtain [s] a favorable adjudication on the merits on a coverage question as the result of the expenditure of [counsel] fees,' is a successful claimant under Rule 4:42–9(a)(6)." *Occhifinto v. Olivo Const. Co., LLC*, 114 A.3d 333, 337 (2015). Eligible claimants "include excess or secondary carrier[s] which successfully prosecute a coverage action against the primary carrier when the latter has wrongfully refused to defend its insured," *Tooker v. Hartford Accident & Indem.*, Co., 347 A.2d 371 (N.J. Super. Ct. App. Div. 1975)), or "a party in a negligence action who, like plaintiff, is a third-party beneficiary of a liability insurance policy and litigates a coverage question against a defendant's insurance carrier." *Occhifinto*, 114 A.3d at 337. Ultimately, however, the award of defense costs is "not mandatory in every

15

action on an indemnity or liability policy" but rather is committed to the trial judge's "broad discretion." *Enright v. Lubow*, 521 A.2d 1300 (N.J. Super. Ct. App. Div. 1987).

Defendants argue that Star is liable for their defense costs under NJCR 4:42–9(a)(6) because the complaint states that defendants "owed a duty of care to [Star] 'as the . . . excess liability insurer'" and because Star's legal rights derive from its liability insurance policy. (DBr at 36–37). Star opposes this relief, stating that the rule does not permit fee-shifting in *any and all* cases simply because the case involves an insurance policy. (PBr at 21).

The posture of this application is unusual in that an insured is not seeking fees based on a wrongful denial of coverage. Indeed, the insurer—once notified—did provide coverage, subject to a reservation of rights. The claim here is not denial of coverage but one of third-party legal malpractice, which I have dismissed without prejudice. I therefore do not consider the Hunt Defendants here to be "successful claimants" within the meaning of NJCR § 4:42–9(a)(6).

Accordingly, defendants' motion for an award of attorney fees and costs is **denied.**

### IV. Conclusion

For the reasons set forth above, the motion of defendants Ronald Hunt and Hunt, Hamlin & Ridley to dismiss Count IV of the complaint (DE 7) is **GRANTED** without prejudice to the filing of a motion to amend the complaint within 30 days. Defendants' associated motion for an award of attorney fees and costs is **DENIED**.

An appropriate order follows.

Dated: December 6, 2019

**Kevin McNulty**
**United States District Judge**