UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| STAR INSURANCE COMPANY, | |
|---|---|
| Plaintiff/Counterclaim Defendant, | Civ. No. 19-8677 (KM)(JBC) |
| v. | OPINION |
| IRVINGTON BOARD OF EDUCATION, | |
| Defendant-Counterclaimant. | |

### KEVIN MCNULTY, U.S.D.J.:

Now before the Court is the motion (DE 21) of the plaintiff, Star Insurance Company ("Star"), to dismiss Count IV of the Counterclaim of defendant Irvington Board of Education (the "Board"), for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). For the reasons stated herein, I will grant Star's motion to dismiss Count IV of the Counterclaim.

Star is the Board's liability insurer. Star's complaint seeks to recover funds Star expended to settle a personal injury lawsuit, *Destiny Dickens, an infant, by her guardian ad litem Yvone Smith, and Yvone Smith, individually v. Irvington Board of Education, et al.*, docket number ESX-L-4698-13 (N.J. Super. Ct. Essex Co.) (the "Dickens Action"). The Board's Counterclaim (DE 16) asserts four causes of action. The gist of all is that Star, because of its misfeasance in relation to the Dickens Action or its settlement, should be required to pay virtually all of the settlement, which amounted to $1 million (following a $6 million jury verdict). Count I seeks a declaratory judgment to that effect. Count II asserts a claim of breach of contract, *i.e.*, Star's failure to meet its obligations under the policy of insurance. Count III asserts a claim of breach of the covenant of good faith and fair dealing, or insurance carrier bad faith. Count IV, the one at issue on this motion, asserts a claim that Star's actions

1

constitute "unlawful discrimination" with the meaning of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-12(l).[1]

## I. Legal Standard on Motion to Dismiss

A counterclaim is a "claim for relief" for purposes of a motion to dismiss. *See* Fed. R. Civ. P. 12(b)(6); *Smith v. Dir.'s Choice, LLP*, Civ. No. 15-00081, 2017 WL 2955347, at *3 (D.N.J. July 11, 2017) ("Courts apply the same standard to counterclaims as they do to complaints in ruling on a Rule 12(b)(6) motion.).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011).

---

[1] Further background may be found in another Opinion I recently filed in this case. (*See* DE 29).

2

For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

## II. Discussion

The Board alleges that Star neglected the Dickens Action, failed to abide by its obligations under the contract of insurance, and took a tough negotiating position with the Board. In Counts I, II, and III, these are alleged to be a breach of Star's duties as an insurer. What Count IV (NJLAD) adds is that Star allegedly did so secure in the "knowledge that the residents of the Township of Irvington are for the most part poor and black, and that the Irvington school district is a poor district-and its belief that the Board would not (as would a school board in a wealthy, non-minority town) have the resources or will to fight with a big, powerful insurance company with limitless resources." (Counterclaim Count IV ¶ 20).

Star, in its motion to dismiss, argues that

(a) Count IV fails to state a claim as a matter of law, because the NJLAD covers a party's discriminatory refusal to deal with another party, but does not cover a discriminatory breach of those parties' existing contract; and

(b) even assuming such a NJLAD cause of action exists, the facts pled in the complaint fail to meet the *Iqbal/Twombly* standard.

### a. Viability of Section 12(l) claim

I start, of course, with the words of the statute on which Count IV is based:

> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: . . . .
>
> l. For any person to refuse to buy from, sell to, lease from or to, license, contract with, or trade with, provide goods, services or information to, or otherwise do business with any other person on the basis of the race, creed, color, national origin, ancestry, age, sex, gender identity or expression, affectional or sexual orientation, marital status, civil union status, domestic partnership status,

3

> liability for service in the Armed Forces of the United States, disability, nationality, or source of lawful income used for rental or mortgage payments of such other person or of such other person's spouse, partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers. This subsection shall not prohibit refusals or other actions (1) pertaining to employee-employer collective bargaining, labor disputes, or unfair labor practices, or (2) made or taken in connection with a protest of unlawful discrimination or unlawful employment practices.

NJLAD, N.J. Stat. Ann. § 10:5-12(1) ("Section 12(l)").

NJLAD, as the Board points out, is a remedial statute, aimed at eradicating discrimination, and by its own terms is to be "liberally construed." N.J. Stat. Ann. § 10:5-3. Still, "the LAD's reach, although broad, is not without limitation," *Raspa v. Office of Sheriff of Cty. of Gloucester*, 191 N.J. 323, 336 (2007). I cannot read into the NJLAD a cause of action that is simply not to be found in the statute's language.

Section 12(l) makes it unlawful "*to refuse to* ... contract with . . . any other person on the basis of the race . . . of such other person." Thus an insurer might be liable for, *e.g.*, denying a qualified minority member's application for insurance on the basis of race. But the statute does not, by its terms, cover discrimination in the performance, or a discriminatory breach, of an existing contract. For that, the law of contracts supplies a remedy, and indeed the Board has invoked that remedy.

In support of its motion, Star cites one state Appellate Division case, *Rowan v. Hartford Plaza Ltd.*, 2013 WL 1350095, at *10 (N.J. Super. Ct. App. Div. 2013) (Section 12(l) "does not apply to discrimination during the ongoing execution of a contract."). Star also cites three opinions of this district court, *Axakowsky v. NFL Productions, LLC*, 2018 WL 5961923, at *8 (D.N.J. 2018) ("the statute expressly covers only refusals to do business with a person based on a protected characteristic."); *7-Eleven, Inc. v. Sodhi*, 2016 WL 3085897 (D.N.J. 2016) (dismissing claim by franchisee of discrimination in the course of the ongoing contractual relationship); *Naik v. 7-Eleven, Inc.*, 2014 WL 3844792

4

(D.N.J. 2014)( "Plaintiffs conflate a refusal to continue to contract with alleged discrimination during the ongoing execution of a contract, discrimination which [*Rowan, supra*] makes clear is outside of the protections of N.J.S.A. 10:5-12(l).").

I find Star's citations persuasive. The cases cited by the Board do not detract from the force of these holdings.

*McMahon v. UMDNJ*, 2011 WL 5082246 (D.N.J. 2011), involved, *inter alia*, an allegedly discriminatory dismissal of a student from an academic program based on his military service. The case dealt primarily with other issues, but noted that "the [Section 12(l)] goods and services subsection of the LAD protects individuals from discriminatory refusals to deal—it does not address hostile work or educational environments." *Id.* at *6. McMahon's context, then, is far removed from that of this case, and it does not contradict the holdings cited above.

*Bubbles N' Bows, LLC v. Fey Publishing Co.*, 2007 WL 2406980 (D.N.J. 2007), involved dismissal of a Section 12(l) claim against a publication that refused to honor its agreement to print an "Alternative Lifestyle" product catalogue. The court, per Judge Wolfson, dismissed the claim because it failed to "identify any individual or group of individuals within the protected class who have been discriminated against," and therefore did not allege causation or damages in the form of, *e.g.*, damage to plaintiff's business. *Id.* at *6. The case did not discuss the issue of whether a breach of contract is actionable under Section 12(l). Moreover, it was decided years before any of the four cases cited by Star.

*Hudson Environmental Services, Inc. v. New Jersey Property-Liability Insurance Guaranty Association*, 372 N.J. Super. 284, 302, 858 A.2d 39 (Law Div. 2004), in the court of interpreting another statute, compared it to NJLAD thus:

> [I]t is hard to conclude, for example, that the Legislature intended section 17 to supersede the Law Against Discrimination, which would bar discrimination in the payment of insurance claims. See

5

> N.J.S.A. 10:5-12(1) (making it unlawful for any person to discriminate in the sale or provision of services, goods and information).

*Id.* at 302. This is pure dictum—a hypothetical comparison which does not represent the trial court's considered analysis of the scope of Section 12(l). And, like *Bubbles N' Bows,* it long preceded the authoritative case law cited by Star.

*Klein v. Oregon Bureau of Labor and Industries*, 139 S. Ct. 2713 (2019), cited by the Board, requires little comment. It is a one-sentence order remanding a case to the Court of Appeals of Oregon for further consideration in light of *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 584 U.S. __, 138 S. Ct. 1719 (2018). It involved an Oregon baker's denial of service to a same-sex couple who wished to purchase a wedding cake. It has nothing to do with NJLAD or a claim based on breach of an ongoing contract.

The rule adopted here is not, as the Board implies, arbitrary or nonsensical. Section 12(l) addresses the reality that minorities cannot get in the game if others refuse to contract with them. The legislature could legitimately conclude that where the parties are in a contractual relationship and one of them fails to live up to its obligations, ordinary remedies (like those invoked in Counterclaim Counts I, II, and III) are available and adequate.

Count IV of the Counterclaim is therefore dismissed, because it fails to state a NJLAD claim under Section 12(l), as a matter of law.

### b. Adequacy of pleading

That being the case, I deal only briefly with Star's alternative contention that Count IV fails to meet the pleading standards of *Twombly* and *Iqbal.* Even assuming the viability of the Board's NJLAD theory, I would dismiss Count IV of the Counterclaim on this alternative basis.

For present purposes, I adopt the Board's summary of the allegations of Count IV:

> .... Star was given an opportunity to participate in the defense of the Dickens action. Star was provided with notice and

consistent updates regarding the litigation. (ECF 16, ¶¶ 18-33.) Nonetheless, Star waited until after a second arbitration to even acknowledge receipt of the claim. (Id., ¶ 33.) Even after Star responded, it did not request a litigation update or analysis from the Board, nor did it question the defense being provided or demand that the Board settle the case and not proceed to trial. (Id., ¶ 34.) Star was provided with another update regarding the case proceeding to trial, but it did not respond or make any requests with regard to trial or settlement. (Id., ¶¶ 35-36.) Star did not raise any objections about the way that the Dickens action was handled until after a $6 million verdict had been entered against the Board. (Id., ¶¶ 37-38.) It is plain that Star's after-the-fact objections to what occurred in connection with the Dickens action were a pretext to avoid having to pay under the policy. In reality, Star acted in a discriminatory manner in an effort to avoid its obligations.

Star was aware of the racial makeup of Irvington and the Board at the time it asserted its objections with regard to the Dickens action. (Id., Counterclaim, Facts Common to All Counts, ¶ 8-9.) Specifically, Star was aware that the Board is comprised of all non-Caucasian and/or African American members. (Id., Counterclaim, Facts Common to All Counts, ¶ 2.) Star was aware that 85% of Irvington residents who responded to the 2010 United States Census self-identified as Black or African American. (Id., Counterclaim, Facts Common to All Counts, ¶ 3.) Star was also aware that majority of students who attend the Irvington public schools are also black or African American. (Id., Counterclaim, Facts Common to All Counts, ¶ 4.) Furthermore, Star was aware that the residents of the Township of Irvington, relative to the residents of other townships in the State of New Jersey, are poor. (Id., Counterclaim, Facts Common to All Counts, ¶ 5.)

The Board alleges that based on this knowledge, Star took unreasonable and aggressive positions because it believed that the Board would not have the ability to fight back against Star. (Id., Counterclaim, Count IV, ¶ 20.) Star's discriminatory animus can be plainly seen it its proposal at mediation to pay only 25% of any settlement above the Board's self-insured retention, despite Star's clear obligation to pay 100% above the Board's self-insured retention. (Id., Counterclaim, Count IV, ¶ 21.) Star's position is that this offer was based upon the Board's failure to provide Star

7

with adequate notice of the Dickens action, failure to provide an adequate defense, and failure to settle within the self-insured retention. These positions are unsupported by the evidence and are simply an effort to hide Star's true motivations.

(Brief filed by the Board (DE 21-1) in support of motion to dismiss, pp. 14–15).

This is an ordinary allegation of breach by an insurer. The only addition is the insurer's "knowledge" that Irvington is a cash-poor municipality and that many of its residents and students are African-American. The mere knowledge of a party's race is not enough to convert an ordinary commercial claim into one of racial discrimination under the NJLAD. *See Collick v. William Paterson Univ.*, No. 16-471 (KM) (JBC), 2016 WL 6824374, at *13 (D.N.J. Nov. 17, 2016) ("Voicing a grievance and identifying the participants by race is not enough, standing alone, to support an inference of racial discrimination")[2]; *Coulton v. Univ. of Pennsylvania*, 237 F. App'x 741, 747 (3d Cir. 2007) (allegation that supervisor was of a different race was insufficient by itself to permit an inference of discrimination).

The alleged circumstances here, however liberally read, do not suggest discrimination. These are not actions that would not ordinarily occur but for a discriminatory motive—such as, for example, the denial of insurance to a minority applicant whose qualifications were equal to those of an accepted non-minority applicant. Here, the insurer's commercial interests are sufficient explanation for its actions, even should they ultimately be proven to be wrongful. No discriminatory history is cited. No suggestive bigoted language is quoted. No relevant factual comparisons are drawn. In short, no facts or circumstances are pled to suggest that Star's motivations were racially discriminatory.

For this additional and alternative reason, then, Count IV would be dismissed for failure to meet federal pleading standards.

---

[2] *Collick*, my own decision, was *adhered to on denial of reconsideration*, No. CV 16-471 (KM) (JBC), 2017 WL 1508177 (D.N.J. Apr. 25, 2017), and *aff'd in part, remanded in part*, 699 F. App'x 129 (3d Cir. 2017). The subsequent history was unrelated to the proposition quoted.

### III. Conclusion

For the reasons set forth above, Star's motion (DE 21) to dismiss Count IV of the Board's Counterclaim is **GRANTED**. In an abundance of caution, and because this is an initial dismissal, it is entered without prejudice to the filing of a properly supported motion to amend the Counterclaim within 30 days.

An appropriate order follows.

Dated: December 17, 2019

Kevin McNulty
**United States District Judge**